ROXANA SHELTON

*v.*

DANIEL BLAKE.

*Filed at Ottawa November 14, 1885.*

1. SHERIFF'S DEED—*held by assignee of certificate of purchase—prerequisites to an assertion of his rights under the deed.* On bill by the holder of a sheriff's deed, made to him as assignee of the certificate of purchase, to set aside certain deeds made by the defendant in the judgment under which the sheriff's sale was made, as clouds upon the title, it is not essential to the relief sought, for the complainant to prove affirmatively that he paid value for the certificate of purchase assigned to him, and upon which his deed was made. Until his deed should be impeached, in some mode known to the law, it is *prima facie* sufficient as a basis to the relief sought by such a bill.

2. A sheriff's deed for land sold under execution against the owner of the land, is supported by the judgment under which the sale was made, which, in the absence of proof of fraud, is conclusive of the indebtedness of the defendant therein; and the sheriff's return of the sale and the price paid by the creditor, is sufficient to show that the sale was for value then paid. In such case, the sheriff's deed to an assignee will be good even though made on an assignment of the certificate of purchase made by the assignor as a gift to the assignee.

3. FREEHOLD—*whether involved*—*on bill to remove cloud upon title*— *as affecting the right of appeal.* A bill by a holder of a sheriff's deed for land sold under execution, against the holder of an adverse title, alleging the latter to be colorable, merely, and that although it bears date prior to the lien of the judgment under which the sheriff's deed was made, yet that the date is false, and seeking to set such deed aside as a cloud on the complainant's title, directly involves a question of freehold, and a writ of error lies directly from this court to the trial court, to review the decree in such case. This case is distinguished from *Sawyer* v. *Moyer*, 105 Ill. 192, and other like cases.

WRIT OF ERROR to the Circuit Court of Livingston county; the Hon. FRANKLIN BLADES, Judge, presiding.

Mr. R. R. WALLACE, and Mr. J. T. TERRY, for the plaintiff in error:

The land was conveyed to Mrs. Shelton before the liens of the judgments attached, in payment of a loan she made her husband in 1874. To set aside her deeds as a cloud on complainant's title, he must show that he paid a valuable consideration for the assignment of the certificates of purchase. As a mere volunteer he can not defeat a prior unrecorded deed. If he paid nothing for the certificates he is not wronged by not getting the land, while if he does prevail, the plaintiff in error is a sufferer to the extent of what she paid for it. *Baldwin* v. *Sager*, 70 Ill. 503; 1 Story's Eq. Jur. 58, 59; Willard's Eq. Jur. 608.

Defendant in error, in taking an assignment of the certificates of purchase without inquiry as to the title to the land, was guilty of gross negligence. He was chargeable with notice of every fact that he could with reasonable diligence have ascertained. *Harper* v. *Ely*, 56 Ill. 179; *Life Ins. Co.*

v. *Ford,* 89 id. 252; *Heaton* v. *Prather,* 84 id. 330; *Coari* v. *Olsen,* 91 id. 273; *Henneberry* v. *Morse,* 56 id. 394; *Babcock* v. *Lisk,* 57 id. 328; *Ogden* v. *Havens,* 23 id. 57.

It requires the strongest and most convincing evidence to overcome the presumption arising from the certificate of acknowledgment, that these were executed on the day of their date. *Calumet Co.* v. *Russell,* 58 Ill. 426; *Graham* v. *Anderson,* 42 id. 514; *Russell* v. *Baptist Society,* 73 id. 337; *Kerr* v. *Russell,* 69 id. 666; *Fitzgerald* v. *Fitzgerald,* 100 id. 385.

Mr. C. C. STRAWN, for the defendant in error.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

It may be well to remark, *in limine,* that a suggestion made in the argument in regard to the question of jurisdiction, shows that there is some misapprehension in the minds of counsel in that respect. This is not, like *Sawyer* v. *Moyer,* 105 Ill. 192, and other like cases, a bill to declare lands subject to the liens of executions, leaving the title where it is when those liens shall be discharged. It is a bill by the holder of sheriff's deeds to the property, against the holder of an adverse title, alleging that that title is colorable, merely, and that, although it bears date prior to the lien of the judgments under which the sheriff's deeds were executed, that date is false, and that the real date is subsequent to the lien of those judgments, and praying that it may be therefore set aside as colorable, etc.,—and so the question of freehold is directly involved, *(Chicago Theological Seminary* v. *Gage,* 103 Ill. 175,) and the writ of error was properly prosecuted from this court.

The deeds of defendant in error were made to him by the sheriff, upon certificates of purchase made to other parties, and assigned to him; and the point is made that it was incumbent on him to affirmatively prove that he paid value for the certificates before they were assigned. Whether the

sheriff's deed should have been made to the purchaser at the execution sale, or to the assignee of that purchaser, concerns only those parties. The holder of the certificate had the right to assign it, and he might have done so as a gift, without any valuable consideration. The sale is supported by a judgment, which settles the question of the then indebtedness of the defendant in the execution, and the return of the sheriff conclusively establishes that the sale was for value then paid. No questions akin to those arising in *Baldwin* v. *Sager*, 70 Ill. 504, and *Brown* v. *Welch*, 18 id. 343, are presented here. The rights of defendant in error were fixed by the judgment, the levy, and the sale; and a subsequent grantee can not question that they were equitable, if they were in conformity with the statute. It is not a case of a mere volunteer purchasing, where there was an outstanding equity. If the theory of defendant in error be true,—and the court below held that it was,—plaintiff in error had no outstanding equity as against this sheriff's sale. When the lien of the execution under which it was held, attached, she had no deed to the property, recorded or otherwise, and no pretence of claim to it in any other manner. Until the deed of defendant in error was impeached, in some mode known to the law, it was *prima facie* sufficient as a basis to the relief which he asked.

The main question is one of fact. The court below held, and decreed accordingly, that the deeds from Charles E. Shelton and wife, to Richard D. Parkin, and by Richard D. Parkin and wife, to plaintiff in error, were not executed, as they purport, on the 10th of October, 1876, but that they were, in fact, executed in January or February, 1881, and falsely and fraudulently dated back to October 10, 1876, to cheat and defraud creditors, etc. We are not prepared to say that the court below erred in so holding and decreeing. There is much conflict in the evidence, but there are some facts about which there is no controversy, that seem to us inconsistent with honesty and good faith in the conveyance by Shelton

and wife to Parkin, and Parkin and wife to defendant in error. The property lies in Livingston county, and Shelton and wife resided there. The deeds were executed in the city of Chicago. Parkin was a stranger to Shelton and wife, they having never met until the deeds were executed. When the deeds were executed, they were not placed upon record, and there was no outward visible change in the possession to advise the public of the fact that there had been a change of owners. Why should Shelton and wife go to Chicago to execute their deed? Why should they convey to an entire stranger? Why should they not be willing, nay, even anxious, to place the deed on record at the earliest possible opportunity? If the transaction was in good faith,—what they now claim it is,— it will be difficult to furnish entirely satisfactory answers to these questions. Competent persons to write and take acknowledgment of the deed, could, without doubt, have been found in every township in Livingston county. Shelton and wife had then resided there some twenty years, and it appears from circumstances in proof that they had contracted numerous acquaintances and acquired some friends. It would seem that if the transaction would have borne publicity and free discussion, the most natural thing would have been to have made the deed at home, to some old friend, and have had him reconvey, and then, without much delay, have put the deeds upon record. Shelton is shown to have been a trading man, and if, in fact, he made the deed in 1876, to protect his wife, the same motive would have prompted its immediate record, that persons trading with him would have had, thereafter, no pretext for trusting him upon the faith of his ownership of that property. If, however, as Parkin and wife swear, the deeds were not made until in January or February, 1881, and if, as other witnesses swear that Shelton told them, his attorney in Chicago had a notary in his office whom he could get to take acknowledgments of deeds ante-dated as might be desired, and if, as also other witnesses testify that Shel-

ton said, he intended to have the deed ante-dated so as to cut out creditors, a motive is disclosed for the taking of the acknowledgment at Chicago, the conveying to a stranger there, and the withholding of the deed from the record. If the deed had been made to a citizen known and living in Livingston county, he could have been readily traced out, and, presumably, prevailed upon to state the facts. The recording of the deed would have at once led to investigation, and the longer that could be postponed, if the transaction would not bear investigation, the better.

The evidence abundantly shows the bad faith of Shelton in this transaction. He went into bankruptcy in 1878 or 1879. He did not schedule this real estate. It is proved that after he was discharged he admitted that this land belonged to himself, and when he was informed that his creditors knew of it, he proposed to convey it and date the deed back, saying that inasmuch as the deeds to himself for the land were not recorded, no body would ever find out about the ante-dating of the deed. The reading of the examination of plaintiff in error does not produce an impression in her favor. It is quite clear that she has been much impressed by her husband, and she is circumstantially and materially contradicted as to her being in Chicago in 1876, when she says the deeds were executed. It is true there is some evidence tending to corroborate her, and there are some witnesses swearing that her husband has a good reputation for truth and veracity, although many swear that his reputation in that respect is bad; but upon the whole, as we have before observed, we can not say the court erred in decreeing as it did. It will subserve no useful end to comment upon the evidence of each witness *seriatim.* It is enough that the record has been carefully read and considered.

The decree is affirmed.

*Decree affirmed.*